[S. F. No. 19217. In Bank. May 27, 1955.]

HAROLD DONALD MURRAY, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents; DONALD N. UTHUS, Real Party in Interest.

Frank J. Perry and George Olshausen for Petitioner.

No appearance for Respondents.

Dan L. Garrett, Jr., for Real Party in Interest.

CARTER, J.—Harold Donald Murray, petitioner, seeks by writ of certiorari to review the lawfulness of an order of civil arrest issued by respondent court on August 12, 1954. Respondent court denied a motion to quash said order on August 16, 1954, and this petition followed.

Donald N. Uthus, real party in interest, filed an action against Murray on August 12, 1954, seeking to recover various amounts of money totaling $10,124.39 allegedly loaned by Uthus to Murray at his instance and request and which he had promised but failed and refused to repay. On the same day, Uthus filed his affidavit and that of William Stelter on an

application for an order of civil arrest of Murray. The order was issued by the Superior Court of the City and County of San Francisco and directed that Harold Donald Murray be arrested and held for bail in the sum of $10,124.39. The order recited that a surety company bond in the sum of $2,500 had been previously filed in accord with the provisions of section 482 of the Code of Civil Procedure.

On August 16, 1954, petitioner Murray, having been released after posting bail in the sum specified, moved the court to quash the order for civil arrest and to exonerate the bail that had been posted. The petitioner's motion was denied on August 16, 1954.

Subdivision 1 of section 479 of the Code of Civil Procedure permits civil arrests in an action for the recovery of money on a cause of action arising upon contract express or implied ''. . . when the defendant is about to depart from the state with intent to defraud his creditors''; subdivision 5 of the same section permits such arrests ''When the defendant has removed or disposed of his property, or is about to do so, with intent to defraud his creditors.''

Sections 480 through 504, Code of Civil Procedure, provide the procedure and requirements to be met when an order for civil arrest is sought and made. So far as is here pertinent, section 480 provides that the order must be obtained from a judge of the court in which the action is brought; section 481 provides that the plaintiff, or some other person, must make it appear to the judge, by affidavit ''. . . that a sufficient cause of action exists, and that the case is one of those mentioned in Section 479. The affidavit must be either positive or upon information and belief; and when upon information and belief, it must state the facts upon which the information and belief are founded.''

It is contended by petitioner here that the complaint and affidavits upon which the order was issued were insufficient to authorize the order to issue and that therefore the order is void because it was beyond the jurisdiction of respondent court. It is argued that the affidavits fail to show that Uthus had a cause of action against petitioner; that the affidavits failed to show that petitioner removed or disposed of his property, or was about to do so, with intent to defraud his creditors; that the affidavits failed to show that petitioner was about to depart from the state with the intent to defraud his creditors; that the affidavits include statements made on information and belief without stating the facts on which the information and belief were based.

The affidavit of Donald N. Uthus, notarized on August 6, 1954, and filed on August 12, 1954, sets forth the following information:

"That affiant at all times mentioned herein has been, and now is, the owner and operator of an export-import business in the City of Washington, D. C.; and

"That during the month of September, 1952, affiant hired and employed the defendant Harry Donald Murray to work for affiant on a commission basis, and affiant agreed with said Harry Donald Murray that affiant would loan to him such sums of money as said defendant needed for living and travel expenses during the time required for defendant to establish himself in the business. It was agreed that affiant was entitled to reimburse himself for such loans out of commissions earned by said defendant; and

"That beginning on September 15, 1952, and continuing to and including December 30,. 1953, affiant loaned to defendant as and for his living expenses and travel expenses, the sum of $10,124.39, over and above all off-sets to be credited against said loans on account of commissions earned by said defendant.

"Prior to defendant's employment with affiant, defendant and his wife had resided in the State of Virginia, and defendant had owned the family residence therein. During the month of May, 1954, defendant sold said home, and informed affiant that defendant received approximately $40,000.00, net, from the sale of said home. At or about said time, defendant booked passage upon the SS PRESIDENT MONROE, a ship owned and operated by the American President Lines, for himself and his wife, to depart from the City and County of San Francisco, State of California, on August 17, 1954, for a round-the-world trip, which said trip is due to return to the City of New York, State of New York, during the month of October, 1954; and

"That affiant is represented by Byron N. Scott, Esquire, as affiant's legal counsel, in Washington, D. C., and that at or about the time [of] the sale of defendant's said family residence, said counsel, at affiant's request, conferred with defendant with regard to an accounting for, and repayment of, monies loaned to defendant by affiant. On said occasions, defendant stated that he could not discuss the matter at that time, but that he would call said counsel at an early date and discuss the matter. Defendant has failed and refused to discuss the matter further with said counsel, and has left

Washington, D. C., and the State of Virginia, as hereinafter described; and

"Following the sale of said family residence, affiant demanded of defendant that he make payment on account of said loans and defendant at said time stated to affiant that he would see what he could do. During the next meeting between affiant and defendant, which occurred during late June or early July, 1954, affiant again demanded payment on account of said loans, and on said occasion, defendant informed affiant that defendant had transferred all of his funds to his wife's name and that he was therefore unable to pay affiant; and

"That during the month of June and to and including July 9, 1954, defendant's visits to affiant's offices became very infrequent, and were customarily made when affiant was absent therefrom. On or about July 7, 1954, affiant questioned defendant as to his plans, and on said occasion, defendant stated to affiant that so far as he knew, he would return to Washington, D. C., from his round-the-world trip and would pick up where he left off with regard to his employment with affiant; and that he would leave Washington, D. C., on July 15th, 1954, to drive to the City and County of San Francisco, State of California, in order to arrive in time to sell his automibile prior to embarking upon the SS PRESIDENT MONROE on August 17, 1954. During said conference of July 7, 1954, affiant advised defendant that it was urgent that a discussion be held with regard to an accounting for, and repayment of, said loans to defendant, and defendant agreed that he would meet with affiant on the following day, July 8, 1954, to settle the matter. Defendant, however, did not appear for said meeting, and affiant instructed his counsel, Byron N. Scott, Esquire, to contact defendant. Said counsel tried without success to contact defendant, and July 9, 1954, affiant found a note in defendant's handwriting addressed to affiant which had been left at affiant's offices sometime after the close of business on July 8, 1954, which read as follows: "Dear Don:

"I have decided to leave a little sooner than I contemplated. Am enclosing all the keys for office and desk and have left everything as far as files are concerned, etc.

"As I told you the other day, I believe I will look for something to do out of Washington when I come back. I have made no plans, and have no idea where I will wind up. If we have another war, perhaps I will come back here.

"I know you disapprove of this trip, and there has been considerable resentment in evidence around the office, that is one reason I have spent so little time there.

"In any event, I wish you the best of everything, and thank you for your many kindnesses.

"In the end I am sure it will be much better this way, and perhaps someday you will know the entire story of what prompted this action in [sic] my part.

Sincerely,<br>Don

"That prior to this time, affiant at no time was advised, or had any indication that defendant did not intend to return to his said employment with affiant at the termination of his trip; and affiant has been unable to locate or contact defendant since that time; and

"That defendant has made application to the American President Lines to interrupt his said round-the-world trip at an Italian Port unknown to affiant, to permit himself and wife to travel in Europe for an indefinite period of time; and

"That prior hereto, affiant has filed suit and said suit is now pending against defendant in the Superior Court, in and for the County of San Francisco, State of California, for the recovery of said sum of $10,124.39, and a copy of said complaint on file herein is attached hereto, and made a part hereof; and that all the allegations of said complaint are true; and

"That based upon the foregoing facts, affiant fears, and believes, and therefore alleges upon the basis of such belief that defendant is about to depart the jurisdiction of this Court, and to depart from the State of California and from the Continental Limits of the United States with the intent to defraud his creditors; and that defendant has removed, disposed of, and concealed his property, and is about to remove said property from the United States with the intent to defraud his creditors; . . ."

The affidavit of William Stelter shows that he is a licensed private investigator in the city and county of San Francisco; that he was employed by the San Francisco counsel for Donald N. Uthus and that during the night of August 9, 1954, the defendant Murray registered at the St. Francis Hotel in San Francisco; that he personally observed the defendant Murray in the St. Francis Hotel and in the offices of the American President Lines in San Francisco.

Petitioner contends that Uthus' affidavit was insufficient by reason of its failure to include therein the allegations of the complaint. █ In *Ex parte Howitz*, 2 Cal.App. 752, 755 [84 P. 229], it was held: "Before an order of arrest can be made it must appear by affidavit that a sufficient cause of action exists (Code Civ. Proc., § 481). In this regard the affidavit states 'that a copy of the verified complaint in this action filed to-day is hereto annexed and made a part of this affidavit; and that the cause of action therein set forth exists in favor of the plaintiff and against said defendant, and affiant avers that the allegations contained therein are true.' A copy of the complaint was attached to the affidavit, stating a cause of action in *indebitatus assumpsit*.

". . . in the case at bar a copy of the complaint is annexed to the affidavit, and the affiant makes oath that the allegations contained therein are true. We think that this fully complies with the requirements of the law that it must appear from the affidavit that a cause of action exists."

█ In *Peterson* v. *Nesbitt*, 11 Cal.App. 370, 372 [105 P. 135], relied upon by petitioner, the affiant had not sworn to the allegations of the complaint but, as said the court, averred that a good and sufficient cause of action existed. "This is but the statement of the opinion of the affiant that the complaint states a good and sufficient cause of action. It is not a statement of the affiant that the matters set forth in the complaint are true. We apprehend that no prosecution for perjury would lie against the affiant predicated upon the falsity of any of the matters set forth in the complaint."

█ In addition to the copy of the complaint which the affiant "made oath" was true, the affidavit itself contained sufficient facts from which a judge could determine that a sufficient cause of action existed between the parties. (Code Civ. Proc., § 481.)

█ Petitioner contends that the affidavit is insufficient because it refers to the complaint as "already on file" and that such was not the case.* It would appear to be a sufficient answer that at the time the order was issued, the complaint was on file. Further, sections 479, 480, 481 do not specifically provide that the complaint must be filed prior to the time the affidavit is signed.

---

*The complaint was *not* on file at the time Uthus' affidavit was signed, but was on file when the affidavit was filed and at the time the order of civil arrest was issued. A copy of the complaint was attached to the affidavit and it was averred in the affidavit that ". . . all of the allegations of said complaint are true; . . ."

■ In *Ex parte Cohen*, 6 Cal. 318, 320-321, it was held that an order of arrest issued prior to the time the complaint was filed was void for lack of jurisdiction. It was said: "Until there is a suit instituted, there can be no defendant, and consequently no authority, under the statute, to issue an order of arrest. . . . It appearing that no such action had been instituted at the time of issuing the order, it was void for want of jurisdiction." It appears, therefore, that since the complaint was filed prior to the time the order was issued, petitioner's contention is without merit.

Petitioner next contends that the affidavits are insufficient under section 479, subdivision 1, of the Code of Civil Procedure. That section provides that civil arrest is allowed when the defendant is about to depart from the state "with intent to defraud his creditors." Petitioner does not seriously contend that the affidavits are insufficient to show his imminent departure from the state, but does contend that Uthus' affidavit is insufficient to show that he intended to defraud his creditors.

■ The scope of appellate review in a case such as the one here under consideration is limited to a determination as to whether there was sufficient evidence, in the form of allegations in the supporting affidavits, to support the order made by the trial court. ■ An appellate court will not disturb the implied findings of fact made by a trial court in support of an order, any more than it will interfere with express findings upon which a final judgment is predicated. ■ When the evidence is conflicting, it will be presumed that the court found every fact necessary to support its order that the evidence would justify. ■ So far as it has passed on the weight of the evidence, its implied findings are conclusive. This rule is equally applicable whether the evidence is oral or documentary.

■ In the consideration of an order made on affidavits (as here) involving a question of fact, the appellate court is bound by the same rule as where oral testimony is presented for review (*People* v. *Western Meat Co.*, 13 Cal.App. 539, 544 [110 P. 338]; *Maselli* v. *E. H. Appleby & Co., Inc.*, 117 Cal. App.2d 634, 638 [256 P.2d 618]; *Jones* v. *Lindsey*, 114 Cal. App.2d 237, 239 [250 P.2d 153]; *Schreiber* v. *Hooker*, 114 Cal.App.2d 634, 640 [251 P.2d 55]; *Hayutin* v. *Rudnick*, 115 Cal.App.2d 138, 140 [251 P.2d 707]; *Paulekas* v. *Paulekas*, 117 Cal.App.2d 73, 77 [254 P.2d 941]; *Globe D. Lunch Co.* v. *Joint Executive Board of Culinary Workers*, 117 Cal.

App.2d 190, 193 [255 P.2d 94]). **[10]** Only where an order rests on undisputed facts from which only one conclusion can be drawn, is an appellate court not bound thereby (*Estate of Burnett,* 11 Cal.2d 259, 263 [79 P.2d 89]).

When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed. (*Hayutin* v. *Rudnick, supra,* 115 Cal. App.2d 138, 140.) Viewing the allegations of the affidavit of Uthus in the light of the above stated rule, we see that petitioner sold his home for approximately $40,000; that when payment of petitioner's debt to Uthus was demanded, petitioner informed the affiant that he had transferred all his funds to his wife and that he was therefore unable to pay; that he evaded meetings with either Uthus or his counsel and avoided meeting petitioner in his office; that he made plans to make a round-the-world trip with a planned (but not disclosed to affiant) stop-over for an indefinite time in Europe; that he informed affiant that he would return to affiant's employ upon his return from such trip; that when urged for payment, he advanced the time of departure for his trip, leaving affiant a note stating that he would not be returning to his employ or to the city of Washington, D. C., and that he had made no plans, and had "no idea" as to where he would wind up.

In *Ex parte Fkumoto,* 120 Cal. 316, 321 [52 P. 726], the court said: "It is not enough to assert such fraudulent intent in general terms. Like the statement or proof of a cause of action for fraud, the specific facts relied on must be shown, that the court itself may deduce the fraud, and not leave the question of the sufficiency of his facts to be passed upon by the party. [Citation.] If this is so in cases not involving the liberty of the citizen, *a fortiori* is it demanded in a proceeding such as this." (See also *In re Gillett,* 47 Cal.App. 107, 111 [190 P. 209].)

From the above stated allegations, the trial court could reasonably infer that the sale of petitioner's home, the proposed European tour, taken together with the evasive conduct of petitioner in avoiding contact with Uthus, were accomplished with intent to defraud Uthus, petitioner's creditor.

In *Southworth* v. *Resing,* 3 Cal. 377, 378, a case involv-

ing a civil arrest, the court said: "To entitle a party to the remedy of arrest, it is not necessary he should show positively the commission of a fraud. It is sufficient if the circumstances detailed will induce, in a reasonable mind, the belief that a fraud was intended to be perpetrated. And as a matter of practice, it is safest to award an arrest, even in cases of doubt, because the defendant is protected against the abuse of the process by the undertaking of the plaintiff, which the law requires to that effect, while on the other hand, frauds are proverbially concocted with so much artfulness and ingenuity as render them at all times difficult to be exposed; and when such a case actually exists, the plaintiff is remediless, without the process of arrest. A different rule would almost, if not certainly, destroy its efficiency as a legal remedy."

Petitioner contends that all presumptions are against fraud. He cites *Ex parte Fkumoto, supra,* 120 Cal. 316, 319, for the proposition that when the language of such a statute as the one under consideration is departed from the "party must at his peril employ words of equivalent import; and a failure in this respect is fatal." As heretofore set forth, the language used by affiant reasonably and logically set forth facts from which the trial court could have inferred a fraudulent intent on the part of petitioner to evade payment of his debts. Petitioner cites the Fkumoto case *(supra), Neves* v. Costa, 5 Cal.App. 111 [89 P. 860], and *In re Miller,* 60 Cal. App. 39, 42 [212 P. 54], as proof of his statement that the facts set forth by affiant were not susceptible of the inference of a fraudulent intent. It would appear that each of these cases was decided on its own facts as this one must be; that here the trier of fact could, and did, impliedly find in issuing the order that petitioner was guilty of a fraudulent intent. (*Matter of Application of Caples,* 26 Cal.App. 786, 788 [148 P. 795]; *Matter of Application of La Due,* 161 Cal. 632, 635 [120 P. 13].)

It is next argued that section 481 of the Code of Civil Procedure provides that the affidavit must either be positive or upon information and belief; that when made on information and belief, the facts must be stated on which the information and belief are founded. Affiant Uthus alleged that "based upon the foregoing facts, affiant fears, and believes, and therefore alleges upon the basis of such belief that defendant is about to depart the jurisdiction of this Court, and to depart from the State of California and from the Continental Limits of the United States with the intent to

622

defraud his creditors; . . .'' Petitioner relies on the rule set forth in *Neves* v. *Costa, supra,* 5 Cal.App. 111, 115-116, that '' 'While the affidavit may state generally the grounds of the application upon belief only, we understand the rule to be well settled that, to show the grounds of his belief, he must set forth such facts and circumstances *within his own knowledge,* as will authorize the officer who is to issue the warrant to *find* such a state of *facts* as required by the statute to authorize the proceeding. And if the plaintiff is not himself personally cognizant of the facts and circumstances relied upon, he must procure the affidavit of someone who is thus personally cognizant of them. The warrant cannot be issued upon hearsay, nor upon any statement, however positive, founded upon hearsay.' (*Proctor* v. *Prout,* 17 Mich. [474] 475.)'' (Emphasis that of the court.) ▊ The heretofore summarized portion of the affidavit of Uthus sets forth certain ''facts and circumstances within his own knowledge'' which are sufficient without reference to any facts alleged that may have been based on hearsay. As noted by the court, the affidavit in the Neves case ''contains no positive allegation of fraudulent intent, and the only statement of the debtor's intention to leave the state is that he told M. Macedo so. . . . If the affiant had heard the plaintiff tell Macedo it would have been competent evidence.'' Uthus here alleges among other things, positively, that petitioner *told him,* and *wrote him,* and that petitioner had evaded *him*—not that *someone* had told Uthus that petitioner had sold his home, transferred the proceeds to his wife's name, or was about to depart the state. It has been held that where no prosecution for perjury would lie against the affiant, predicated upon the falsity of any matters set forth in the complaint, it is radically insufficient (*Peterson* v. *Nesbitt, supra,* 11 Cal.App. 370, 372) ; and that a warrant of arrest cannot be issued on hearsay, nor upon any statement, however positive, founded upon hearsay (*Lay* v. *Superior Court,* 11 Cal.App. 558, 560 [105 P. 775] ; *In re Gillett, supra,* 47 Cal.App. 107, 111) ; and that such a warrant of arrest cannot be made upon the mere statement of a conclusion of law. However, in *In re Keene,* 34 Cal.App. 263, 267 [167 P. 194], it was held that ''While some of the expressions therein [affidavit] contained may be construed as stating the conclusions of the affiant, there remain substantial statements of facts apparently within the knowledge of Whitefield and of Bennett, which we think are legally sufficient to have authorized the order of arrest.'' ▊ There

must be positive averment of fraud or positive evidence of facts from which fraud can be inferred (*Fkumoto* v. *Marsh*, 130 Cal. 66 [62 P. 303, 509, 80 Am.St.Rep. 73]). It would appear that the affidavit of Uthus contains sufficient positive averments of fact, together with the inferences to be drawn therefrom, to justify the action of the trier of fact.

Petitioner argues that there is no averment that Uthus made any attempt to ascertain the whereabouts of petitioner's assets prior to resorting to the remedy of civil arrest (*Ex parte Fkumoto, supra*, 120 Cal. 316, 320). In the Fkumoto case, affiant had averred that a part of defendant's goods had been carried away to a place unknown to the affiant. The court stated that it did not appear that plaintiff had made any effort, by inquiry or otherwise, to ascertain their destination. ▉ Affiant here stated that he and his counsel had tried to locate petitioner. The affidavit of Stelter, a private investigator, shows that he was employed by counsel for Uthus to find petitioner and that he located him in the city and county of San Francisco on August 9th. We must, on this review, assume that these allegations were considered sufficient by the trier of fact to justify the action taken by him. (*In re Keene, supra*, 34 Cal.App. 263, 267.)

▉ Petitioner contends that the transfer of the proceeds of the sale of the house to his wife does not necessarily show a fraudulent intent; that avoidance or postponement of payment of a debt does not necessarily show a fraudulent intent; that the change in the date of departure was not necessarily fraudulent; that Uthus' "inability to locate" petitioner was insufficiently alleged. These contentions may be disposed of by reference to the rule that the inferences to be drawn from the facts alleged in the affidavits were for the trier of fact (*Hayutin* v. *Rudnick, supra*, 115 Cal.App.2d 138, 140).

▉ There is no merit in petitioner's contention that the allegations concerning Uthus' inability to locate petitioner are untruthful. The Uthus affidavit was signed on August 6th and he stated therein that he had been unable to locate petitioner since July 9th. Petitioner argues that the affidavit of the private investigator shows that petitioner was, to Uthus' knowledge, in San Francisco on August 9th. Uthus' allegations consist of knowledge had by him up to and including the time the affidavit was signed.

▉ Petitioner also contends that the allegations of the affidavit of Uthus are insufficient under subdivision 5 of section 479 of the Code of Civil Procedure. Under that sub-

division, a civil arrest is permitted when the defendant has removed or disposed of his property with the intent to defraud his creditors. Uthus averred that petitioner had informed him that he had transferred all of his funds to his wife's name and that he was therefore unable to pay affiant. The question is whether such a disposal is the type of disposal contemplated by the first requirement of the subsection. Petitioner relies upon the statement in *Ex parte Fkumoto, supra,* 120 Cal. 316, 320, that "the removal or disposition contemplated is a taking or attempting to take the goods or property without the reach of the process or jurisdiction of the court, either territorially or by concealing or disposing of them where they cannot be found" as authority for the proposition that his transfer of his funds to his wife was not the disposal of property contemplated by the section. In this we agree with petitioner. There is no allegation in the affidavit that such a transfer put the property "without the reach of the process or jurisdiction of the court" or that such transfer was done with a fraudulent intent (*Ex parte Fkumoto, supra,* 120 Cal. 316) although Uthus does allege later generally, on information and belief, that such disposal was accomplished by petitioner for that purpose. There is no allegation that Uthus sought to set aside the transfer of funds, nor that he made any effort, by inquiry or otherwise, to ascertain the whereabouts of petitioner's wife so as to take the proper legal steps for setting aside the transfer to her (*Ex parte Fkumoto, supra,* 120 Cal. 316, 320). It follows that Uthus has not followed the language of the statute (*Matter of Application of Caples, supra,* 26 Cal.App. 786, 788) or set up sufficient facts to justify his belief that petitioner had disposed of his property with the intent to defraud his creditors and that, therefore, the affidavit is insufficient on its face to show a compliance with the provisions of section 479, subdivision 5, Code of Civil Procedure (*Neves* v. *Costa, supra,* 5 Cal.App. 111, 115; *Lay* v. *Superior Court,* 11 Cal.App. 558, 559 [105 P. 775]).

However, since the affidavit was sufficient under section 479, subdivision 1, of the Code of Civil Procedure to confer jurisdiction to issue the order of arrest, the order must be, and is, therefore, affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J. concurred.

Petitioner's application for a rehearing was denied June 23, 1955.