[Civ. No. 6491. Fourth Dist. Sept. 15, 1961.]

THE PEOPLE, Respondent, v. HENRY LEE WALLING, Defendant; ANCHOR CASUALTY COMPANY (a Corporation), Appellant.

Thomas B. Sawyer for Appellant.

Henry A. Dietz, County Counsel, Duane J. Carnes and Russell W. Walker, Deputy County Counsel, for Respondent.

SHEPARD, J.—This is an appeal by Anchor Casualty Company, hereinafter called ''Anchor,'' from an order denying Anchor's motion to vacate forfeiture and exonerate bond.

The facts shown by the record before us are, in substance, as follows: September 3, 1959, Henry Lee Walling was brought before the Municipal Court for the Oceanside Judicial District on the charge of burglary. He pleaded guilty thereto, and his bond was fixed at $1,000. September 4, 1959, an informa-

tion was filed against Walling in the Superior Court of San Diego County. September 5, 1959, Anchor posted a bail bond for Walling's release, responsive to the order for bail, and Walling was actually released thereon. September 10, 1959, the cause was called for arraignment in the superior court. Defense counsel appeared without the defendant, and the matter was continued to September 11. September 11, 1959, the cause was again called, and Walling was again absent. Walling's counsel again appeared, but the record does not show that he offered any explanation to the court on either the 10th or the 11th to account for Walling's absence. There-upon the bail was forthwith ordered forfeited, and a bench warrant ordered for the arrest of Walling.

December 17, 1959, Anchor filed an affidavit signed by James B. Bower, an agent of Anchor, in support of a proposed motion to set aside the order forfeiting bail. The affidavit, in substance, set forth that the failure of Walling to appear was without collusion or connivance of bail, and was by reason of Walling's military service in the United States Marine Corps, Camp Pendleton, California, where the military authorities were holding Walling in custody. Camp Pendleton is within the Oceanside Judicial District and within the county of San Diego, about 40 miles from the location of the San Diego Superior Court.

This motion to vacate the forfeiture was heard January 5, 1960, with the sole appearance noted in the record being that of James B. Bower on behalf of Anchor. A minute order denying the motion to set aside said forfeiture was made and entered on the same day. Apparently no notice of this motion was given to the district attorney, as the district attorney did not appear.

A new motion to vacate the order of forfeiture was made January 21, 1960, and at that time both the district attorney and counsel for Anchor appeared. On the same day the motion was again ordered denied, such order was entered in the minutes of the court, and a formal summary judgment against Anchor in the amount of said bail ($1,000) was signed and entered.

March 18, 1960, a new motion was filed to vacate the order of forfeiture on the ground of mistake, inadvertence, surprise or excusable neglect, under Code of Civil Procedure, section 473, and that at the time of the order of forfeiture and summary judgment Walling was in the military service and was a military prisoner and was thereby prevented from appear-

ing. In support thereof, Anchor filed a new affidavit setting forth, in substance, similar facts to those suggested in the first affidavit, but adding that affiant was first informed on or about December 16, 1959, of Walling's said failure to appear on September 10 and 11; that Walling was surrendered by the United States Navy to the sheriff of the county of San Diego February 5, 1960; that at all times between September 9, 1959, and February 5, 1960, the military authorities refused to surrender Walling to Anchor or the county law enforcement officers; that affiant was informed by the military authorities that they intended to surrender Walling to the county authorities at the end of his term of military imprisonment. This motion was set for hearing for March 31, 1960, but continued from time to time, argued, submitted and finally denied April 28, 1960. The minute entry contains the statement that the motion is "denied on the sole ground that the motion was not made within time limit fixed by Section 1305 Penal Code."

May 3, 1960, a written order was made setting aside the summary judgment on the ground that the superior court lacked jurisdiction in the amount of the claim. In the same written order the court purported to deny the motion to vacate the order of forfeiture of bail, again reciting that the denial was "on the ground that said motion was not made within 90 days from the date of said order of forfeiture." The clerk was instructed by this order to deliver the bond to the county counsel with a certified copy of the order of forfeiture. June 17, 1960, Anchor appealed from the order of April 28, 1960, denying its motion to vacate forfeiture and exonerate bond, reciting that such order was entered May 3, 1960.

VALIDITY OF PROCEDURE FORFEITING BAIL

Anchor first contends that because of the applicability of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, title 50 App. U.S.C.A. (hereinafter called the "Act"), the trial court was deprived of jurisdiction to declare a forfeiture. With this contention we cannot agree. The provisions of the Act (see note 1 below for pertinent provi-

Note 1: Excerpts from Soldiers' & Sailors' Civil Relief Act:

§ 511. Definitions

(1) The term "persons in military service" and the term "persons in the military service of the United States" as used in this Act, shall include the following persons and no others: All members of the Army of the United States, the United States Navy, the Marine Corps, the Coast

sions), in essence, provide (§ 512) that the Act shall be enforced through the usual procedure (insofar as it refers to the state court procedure herein involved) under such

Guard, and all officers of the Public Health Service detailed by proper authority for duty either with the Army or the Navy. The term "military service", as used in this Act, shall signify Federal service on active duty with any branch of service heretofore referred to or mentioned as well as training or education under the supervision of the United States preliminary to induction into the military service. The term "active service" or "active duty" shall include the period during which a person in military service is absent from duty on account of sickness, wounds, leave or other lawful cause.

(2) The term "period of military service", as used in this Act, shall include the time between the following dates: For persons in active service at the date of the approval of this Act it shall begin with the date of approval of this Act; for persons entering active service after the date of this Act, with the date of entering active service. It shall terminate with the date of discharge from active service or death while in active service, but in no case later than the date when this Act ceases to be in force.

(3) The term "person", when used in this Act with reference to the holder of any right alleged to exist against a person in military service or against a person secondarily liable under such right, shall include individuals, partnerships, corporations, and any other forms of business association.

(4) The term "court", as used in this Act, shall include any court of competent jurisdiction of the United States or of any State, whether or not a court of record.

§ 512. Territorial application of Act; jurisdiction of courts; form of procedure

(1) The provisions of this Act shall . . . be enforced through the usual forms of procedure obtaining in such courts or under such regulations as may be by them prescribed.

§ 513. Protection of persons secondarily liable

(1) Whenever pursuant to any of the provisions of this Act the enforcement of any obligation or liability, the prosecution of any suit or proceeding, the entry or enforcement of any order, writ, judgment, or decree, or the performance of any other act, may be stayed, postponed, or suspended, such stay, postponement, or suspension may, in the discretion of the court, likewise be granted to sureties, guarantors, endorsers, accommodation makers, and others, whether primarily or secondarily subject to the obligation or liability, the performance or enforcement of which is stayed, postponed, or suspended.

(2) When a judgment or decree is vacated or set aside in whole or in part, as provided in this Act, the same may, in the discretion of the court, likewise be set aside and vacated as to any surety, guarantor, endorser, accommodation maker, or other person whether primarily or secondarily liable upon the contract or liability for the enforcement of which the judgment or decree was entered.

(3) Whenever, by reason of the military service of a principal upon a criminal bail bond the sureties upon such bond are prevented from enforcing the attendance of their principal and performing their obligation the court shall not enforce the provisions of such bond during the military service of the principal thereon and may in accordance with principles of equity and justice either during or after such service discharge such sureties and exonerate the bail.

regulations as may be by such courts provided; that (§ 513) whenever any liability may be stayed, such stay *may, in the discretion of the court,* be granted to sureties and others primarily or secondarily liable, and whenever, *by reason of the military service* of a principal upon a criminal bail bond the sureties upon such bond are *prevented* from enforcing the attendance of their principal and performing their obligation, the court shall not enforce the provisions of such bond during the military service of the principal thereon and may, in accordance with the principles of equity and justice, either during or after such service, discharge such sureties and exonerate the bail.

A clearer understanding of the problem here involved can be had when the fundamental position of the bail is borne in mind. This position was outlined in the early case of *Taylor* v. *Taintor,* 83 U.S. (16 Wall.) 366 [21 L.Ed. 287], decided in 1873 and cited and quoted with approval by numerous authorities since that time. It is there said, at page 371:

"When bail is given, the principle is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge, and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another state; may arrest him on the Sabbath; and if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest, by the sheriff, of an escaping prisoner." See also *County of Los Angeles* v. *Maga,* 97 Cal.App. 688, 690 [1] [276 P. 352].

While the particular provisions of varying statutory procedure have more or less circumscribed the application of this rule, basic principles remain the same. The bail, then, is to be considered in charge of the defendant. The bail is the one to whom the court may properly look for an explanation of the absence of the defendant.

Thus, the bail has engaged to produce the bailed defendant in court at all times required, or show legal cause why he has not done so. Penal Code, section 1305, has extended special lenience in this regard by allowing for a motion to vacate the order of forfeiture within 90 days. The Act still further extended the time for moving to vacate to within 90 days after

termination of active military service. (*Winslow* v. *Harold G. Ferguson Corp.,* 25 Cal.2d 274, 282 [4c] [153 P.2d 714].)

A showing that Walling was in the active military service at the date of forfeiture is, standing alone, insufficient. The bail must also show some unsuccessful effort to secure the attendance of the principal and that the *active* military service of the principal prevented the principal's attendance. (*People* v. *Continental Casualty Co.,* 284 App.Div. 944 [134 N.Y.S. 2d 742]; *State* v. *Benedict,* 234 Iowa 1178 [15 N.W.2d 248, 251 [5]].) That the courts must exercise some discretion in these matters, which involves weighing the evidence, is clearly evinced by the statute itself, and has been stated by the United States Supreme Court in *Boone* v. *Lightner,* 319 U.S. 561, 567, 570 [63 S.Ct. 1223, 1228, 1229, 87 L.Ed. 1587], as follows:

". . . 'There are adequate safeguards incorporated in the bill to prevent any person from taking undue advantage' of its provisions, we are unable to ignore or sterilize the clause which plainly vests judicial discretion in the trial court."

"Regardless of whether defendant was under a duty to make a disclosure of his situation, once he undertook to do so, the significance alike of what his affidavit said and of what it omitted was to be judged by ordinary tests. One of these is that 'all evidence . . . is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted.' "

What was said in the case of *United States* v. *Jeffries,* 140 F.2d 745, cited by Anchor, must be viewed in the light of what the facts were in that case. There the truthfulness of the statement of counsel to the court and the effect of the military service on the failure of the defendant to appear, were not questioned. Defense counsel there fully apprised the trial court, prior to forfeiture, of the absence of defendant by reason of military service. The questions of the defendant being absent by reason of *active* military service, or of the bail's making any bona fide attempt to secure his presence, were never questioned before the trial court. The Circuit Court of Appeals simply brushed aside the protestations of government counsel respecting the necessity for an adequate affidavit because the question had never been raised before the trial court. Neither was time an element in that case, nor was the question of the bail's showing a bona fide attempt to secure the presence of defendant in court raised or discussed.

In the case at bar, the order of January 5, 1960, involved weighing the material presented to the trial court. The affi-

davit consisted mostly of a statement of general conclusions without probative material, unsatisfactory in quality, to say the least. The affidavit failed to state that Walling was unavailable during the entire 90 days after September 11, 1959. An affidavit under circumstances here present serves the same function as oral testimony in placing evidence before the court. (2 Cal.Jur.2d § 19, p. 629; *People* v. *McCauley,* 1 Cal. 379, 382-383; *Murray* v. *Superior Court,* 44 Cal.2d 611, 619 [9] [284 P.2d 1].)

What oral representations were made to the court at that time are not shown by the record, but it appears from a later affidavit that Anchor could not have made any approach to the military authorities during the period in question, for such later affidavit says that Anchor's first knowledge of Walling's failure to appear was on December 16, 1959. Whether or not this fact was made known to the trial court on January 5, 1960, is not shown. We must assume that the trial court weighed whatever evidence was presented, and found it unsatisfactory. The trial court, on January 5, 1960, had the power to hear and determine the issues on the evidence presented to it. The judgment was not void, even though it might have been judicial error.

Basically, "Jurisdiction is the power to hear and determine the cause. 'Having jurisdiction of the parties and the subject matter of the action the respondent court has the power to determine all questions of law and fact properly presentable under the issues tendered . . . The respondent court has jurisdiction to construe the provisions of the statute . . . and that jurisdiction in the first instance is full and complete.' " (*Pacific States Savings & Loan Co.* v. *Superior Court,* 217 Cal. 517, 521-522 [1] [19 P.2d 977].) Nothing in the record before us even suggests that there was any lack of notice to appear on the arraignment first called for September 10 and again on September 11. We must assume due notice thereof. (*Wadey* v. *Justice Court,* 176 Cal.App.2d 426, 428 [3] [1 Cal.Rptr. 382].)

By Penal Code sections 1305 and 1306, the court in which Walling's case was pending was given the duty to hear and determine the questions regarding forfeiture of the bail posted for Walling's release from custody This is the "usual procedure" referred to in said section 512 of the Act. The court clearly had jurisdiction of the person and the subject matter involved. It followed the procedure outlined by statute. It heard and determined the question before it under direct

648

authority of statute with the parties and the subject matter fully before it.

ORDER OF JANUARY 5, 1960, WAS RES JUDICATA

 No appeal was ever taken from the order of January 5, 1960, denying Anchor's motion to vacate the order of forfeiture. "If the court, in the exercise of its jurisdiction enters a decree affecting property rights contrary to statute, the court is guilty of error of judgment. Neither does such error render void the decree nor does the fact that the error may appear upon the face of the judgment itself indicate its nullity. An erroneous decree which is not void on its face is forever binding and conclusive upon the parties named, upon the status defined, or upon the property described, unless upon motion seasonably made it be vacated or upon appeal it be reversed." (*Estate of Gardiner,* 45 Cal.App.2d 559, 563 [2, 3] [114 P.2d 643].) "In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" (*Bernhard* v. *Bank of America,* 19 Cal.2d 807, 813 [5] [122 P.2d 892].) "Even if the judgment in that action was erroneous, as plaintiff urges, it bars the present action." (*Oppenheimer* v. *Smith,* 158 Cal.App.2d 489, 492 [3] [322 P.2d 499].) (See also *Panos* v. *Great Western Packing Co.,* 21 Cal.2d 636, 640 [4] [134 P.2d 242]; *Weil* v. *Barthel,* 45 Cal.2d 835, 839 [5] [291 P.2d 30].)

It might be suggested that the record does not show that Anchor ever gave notice to the district attorney of the making of the motion of January 5, and that the district attorney was not present. However, while this might have been complained of by the district attorney, certainly Anchor is in no position to complain of its own failure to give notice. It had a full opportunity to be heard and as far as it is concerned, there was a valid hearing.

 In the case here at bar, the motion of January 5, 1960, was too late to afford relief under Penal Code, section 1305, for it was instituted more than 90 days after the date of the order of forfeiture. However, it was within time under the provisions of the Act. (*Winslow* v. *Harold G. Ferguson Corp., supra.*) Treating it, therefore, as a valid motion made within time, we find that the finished minutes of the clerk

contained entry of the order of the court denying the motion to vacate the order forfeiting bail. Nothing in the record indicates that any later written order was ever intended. The order of the court entered in the minutes of the clerk therefore became an appealable final order. (*People* v. *Oppenheimer,* 147 Cal.App.2d Supp. 827, 830 [4] [305 P.2d 306]; *People* v. *Doe,* 172 Cal.App.2d Supp. 812, 814 [2] [342 P.2d 533]; *People* v. *Black,* 55 Cal.2d 275, 277 [3] [10 Cal.Rptr. 459, 358 P.2d 915].) ■ "The forfeiture of bail is an independent, collateral matter, civil in nature, and the effect of an order on a motion to set aside such a forfeiture is substantially a final determination at the trial court level of issues affecting the surety, aside from the principal matter before the court." (*People* v. *Wilcox,* 53 Cal.2d 651, 654 [1] [349 P.2d 522].)

■ As has been already noted, no appeal was taken from this order of January 5, 1960. The order became res judicata. The later motions were simply ineffectual for any purpose. Any appeal from an order denying a later motion on the same subject would have the ridiculous effect of allowing appeal upon appeal, ad infinitum, because all that would be necessary to carry on the litigation indefinitely would be to simply go on making new motions and taking an appeal from each new order of denial. (*People* v. *Brattingham,* 91 Cal.App. 527, 528 [1] [267 P. 120]; *People* v. *Oppenheimer, supra,* p. 829 [1].) The summary judgment ensuing upon the order of forfeiture is a consent judgment, and is not itself appealable. No attempt has been made to appeal therefrom. (*People* v. *Hodges,* 205 Cal. 476 [271 P. 897]; *Kentera* v. *Kentera,* 66 Cal.App.2d 373, 375 [2] [152 P.2d 238]; *Estate of Lingg,* 71 Cal.App.2d 403, 407 [1] [162 P.2d 707].)

From the foregoing, it should be clear that the order forfeiting the bail and the order of January 5, 1960, denying the motion to vacate said forfeiture order, were valid orders. The motions of January 21 and March 18, served no valid purpose. Any reference in the order of May 3, 1960, to the 90-day restriction of section 1305 means nothing. The court lacked the power to grant the motion because the order of January 5, 1960, finally disposed of the matter. No appeal was ever taken from that order, and no motion was ever made to vacate it.

### EQUITABLE PRINCIPLES

■ Anchor contends that the order should have been vacated on equitable principles. As has hereinbefore been ex-

plained, we are unable to discover any equitable principles for application under the facts here present. Anchor was the bail. Anchor had the duty to produce Walling in court or offer a reasonable explanation why it did not do so. It did neither. Anchor apparently made no effort during the following 90 days even to discover the whereabouts of Walling. By its own affidavit, it did not even inquire of the court to find out if Walling had ever appeared. Apparently the things it talks about in its affidavit were after-discoveries, and even then it indulges in generalities, without probative material.

Furthermore, there is a serious question whether Anchor's principal could be considered, during the 90-day period subsequent to September 11, as being sheltered by the cloak of the Act at all. By its own affidavit, Anchor said that Walling was convicted by court-martial of a military offense and that the judgment of the court-martial was that Walling be imprisoned for a period of six months and given an "undesirable" discharge. The "active duty" referred to in section 511 of the Act, undoubtedly controls definitively all of the succeeding sections. In a similar situation in *Mantz* v. *Mantz* (Ohio, 1946), 69 N.E.2d 637, the court clearly and forcefully pointed out that Congress could not have meant to extend the protection of the Act to a person who had been convicted by court-martial of such a serious offense that in the judgment of conviction imprisonment and dishonorable discharge were provided for. In the case here at bar, the discharge was "undesirable." While the "undesirable" discharge does not have as harsh an effect in later years as the "dishonorable" discharge, it does, as contained in this judgment, mean that from the moment the judgment was imposed Walling was no longer considered a part of the *active* military service. Neither the actions of bail nor the actions of the bail's principal present to us any factors which properly warrant the interposition on their behalf of a court of equity.

MUNICIPAL COURT PROPER FOR SUMMARY JUDGMENT

 The action of the trial court in transmitting a certified copy of the order of forfeiture to the municipal court for summary judgment was proper. The amount involved was within the jurisdiction of the municipal court, and not within the jurisdiction of the superior court, and Penal Code section 1306 specifically provides that certified copy shall be transmitted to the court which has jurisdiction upon a contract of similar nature and amount.

What we have said fully disposes of other points raised by the parties.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 8, 1961. Schauer, J., was of the opinion that the petition should be granted.