[Civ. No. 4207. Fifth Dist. Jan. 9, 1981.]

THE PEOPLE, Plaintiff and Appellant, v.
DAVID VILLALOBOS SILVA, Defendant and Respondent;
ALBERT T. RAMIREZ, Intervener and Appellant.

**COUNSEL**

Calvin E. Baldwin and Thomas D. Bowman, County Counsel, and Denis A. Eymil, Deputy County Counsel, for Plaintiff and Appellant.

Perez & Makasian and James M. Makasian for Intervener and Appellant.

No appearance for Defendant and Respondent.

## Opinion

### LAURITZEN, J.,*—

#### Introduction

This appeal raises issues as to whether a bail agent of a corporate surety is entitled to bail exoneration pursuant to Penal Code section 1306 or whether he is barred from pursuing reimbursement because of a lack of standing, collection on the underlying obligation to the surety, the bar of res judicata, or the defense of laches. A careful examination of the record reveals that the bail agent is barred from recovery by the doctrine of res judicata. In addition, the People have cross-appealed from the portion of the lower court's order denying its request for attorney fees and imposition of contempt upon the bail agent. The trial court's rulings on these matters were correct. We affirm.

#### Statement of the Case

Since the procedural posture of the present appeal is complex, it becomes necessary to set forth the case development with specificity.

On May 14, 1970, corporate surety United Bonding Insurance Company (United) filed its bail bond No. 3J-71908 in the amount of $2,500 for the release of defendant David Silva with the Lindsay Justice Court.[1] United's undertaking in this case was made through its bail agent Albert T. Ramirez, who is an appellant here. On June 10, 1970, defendant Silva failed to appear in the justice court and bail was ordered forfeited. Notice of bail forfeiture was mailed by the clerk on June 11 to United and Ramirez. (Pen. Code, § 1305.) On January 11, 1971, a deputy with the Tulare County Counsel transmitted bail bond documents and a copy of the forfeiture order to the superior court.[2] On the same day, the court ordered entry of summary judgment against

---

*Assigned by the Chairperson of the Judicial Council.

[1] Silva was charged with having violated Penal Code section 192 subdivision 3(a) (vehicular manslaughter).

[2] This period of time was allowed to pass from the issuance of the forfeiture notice in order to comply with the 180-day hiatus of Penal Code section 1305, subdivision (a). After this time period has elapsed without challenge, the court can enter a summary judgment against the bondsman based upon the prior declaration of forfeiture. (Pen. Code, § 1306.)

United and in favor of appellant Tulare County (representing the People) in the amount of $2,500. The superior court clerk on January 12, 1971, mailed copies of "Notice of Entry of Summary Judgment" to United, Ramirez, county counsel, and the Lindsay Justice Court. Subsequent examination of the clerk's judgment book by one of Ramirez' employees revealed that the summary judgment was not actually entered, and the People so concede. On January 15, 1971, county counsel demanded payment on the judgment from United and Ramirez. Neither United nor Ramirez honored this demand or directly paid the claim.

On February 19, 1971, the Superior Court of Marion County, Indiana, enjoined United from transacting business in that state and ordered its liquidation. The California Insurance Commissioner was thereafter appointed as United's conservator by the Los Angeles Superior Court. The administration of the liquidation was coordinated by the Indiana Insurance Department, which asked the California commissioner on August 9, 1971, to aid it in gathering the bail bond forfeitures outstanding in California. Specifically, the letter from the Indiana agency stated in pertinent part, "Some funds will be available to pay legitimate forfeitures in full; however, most forfeitures will only be paid a portion of the total claim. . . . We respectfully request that as the bail bond forfeitures occur that we be informed of same and that a proof of claim be requested and filed with the Liquidator as quickly as possible." Subsequently, sometime in August 1971, the California commissioner became United's liquidator and petitioned the Los Angeles Superior Court for "Instructions Re Bail Bond Agents' Indemnity Funds."[3] That superior court issued an order to show cause on the petition, giving notice to all persons interested in the indemnity funds (including United, Ramirez and other bail agents).

After a hearing on the petition (which was not attended by either United, Tulare County or Ramirez), the Los Angeles Superior Court issued an "Order of Instruction Re Bail Bond Agents' Indemnity Funds" on February 8, 1972. The court initially determined that the local bail agents' contracts with United indemnified the corporate surety against liability, entitling United "to recover from the Agent under said Con-

---

[3]Because of his status as a liquidator, the California commissioner had been presented with various claims to escrow accounts established as indemnity funds by United's statewide bail agents. He asked the superior court to provide proper disbursement instructions, including a construction of the agency contract between United and its bail bondsman.

tract upon its incurring or sustaining liability, loss, costs, damages, claims, suits, attorneys' fees and expenses of whatever kind or nature as the result of or in connection with the execution of any bail bond written by the Agent and without payment thereof." The court then found that the monies deposited by United's bail agents into indemnity fund escrow accounts were "held by United as security for the Local Agent's undertakings as set forth in said Contract and, in particular, as security for the Local Agent's agreement to indemnify United and others as set forth in Article 8 of the Local Agent's Contract." It ruled that monies from the funds were to be distributed to indemnitees of the bail agents and that any excess should be returned to the agents. Finally, the court also issued instructions on administration of the indemnity funds to the California commissioner, emphasizing disbursements to "finally approved claims." No challenge to this decree was made by Ramirez.

On November 8, 1973, a deputy from the office of the California commissioner sent a notice of disbursement to Ramirez. This correspondence stated in pertinent part: "Under date of March 30, 1972, you were furnished a copy of the 'Order of Instruction re Bail Bond Agents' Indemnity Funds,' issued by the Superior Court, County of Los Angeles, under Case No. 998159.

"In compliance with such Order, indemnity funds held for your account at Union Federal Savings, Los Angeles (or under a Certificate of Deposit at the United California Bank, Los Angeles) will be disbursed in the following manner and amounts:

| "County | Pro Rata Portion Summary Judgments | Account Number | Amount |
|---|---|---|---|
| Los Angeles | 100% | | $ 2,385.00 |
| Tulare | 100% | | $ 2,500.00 |
| Kern | 100% | | $ 47.00 |

The balance, plus interest if any, has been forwarded to you (or to your assignee) in compliance with such order:

| "Payee | Account No: | Amount |
|---|---|---|
| Surety Insurance Company | 4361 | $ 1,500.89" |

Disbursement was made to County of Tulare from Ramirez' indemnity fund following delivery of the above notice.

On December 20, 1973, Ramirez filed a motion in Tulare County Superior Court to vacate the 1971 summary judgment. This motion was based on the contention that Tulare County had failed to enforce the summary judgment within two years after entry, rendering it void and unenforceable under Penal Code section 1306. In its opposition papers, county argued that (1) Ramirez had no standing to bring the motion, (2) the motion was an improper collateral attack upon the Los Angeles decree, and (3) the summary judgment was enforced within two years. Ramirez filed supplementary points and authorities reiterating his previous arguments and alleging that he never received notice of the Los Angeles proceedings. Following the submission of responsive papers by county, the superior court (per Jacobus, J.) denied Ramirez' motion on March 11, 1974. The court ruled that: (1) Tulare County collected on the judgment well within the two-year period; (2) Ramirez should have attacked the Los Angeles judgment directly in Los Angeles Superior Court rather than doing so through the motion to vacate; (3) Ramirez was not a party to either the bail bond or the original summary judgment; and (4) it would not adjudicate the validity of the Los Angeles decree, which was final and had been enforced. No appeal from this ruling was made by Ramirez.

On February 5, 1976, Ramirez filed a second motion to set aside the 1971 summary judgment. This motion was supported by the following arguments: (1) the superior court lacked subject matter jurisdiction over the summary judgment proceeding because the bail bond was valued at $2,500; (2) bail must be exonerated pursuant to Penal Code section 1306 because the *municipal* court did not enter a summary judgment; and (3) monies received by Tulare County under the void summary judgment must be refunded to Ramirez. In opposition thereto, the county claimed that the 1974 denial of the first motion to vacate was res judicata to Ramirez and that Ramirez did not have a sufficient interest to attack the purported void judgment. After submission of additional authorities by both parties,[4] the superior court (per Bradley, J.) denied the motion. Ramirez did not challenge this second ruling on his motion to vacate.

---

[4] In its reply papers to this motion, county added the argument that the legality of the enforcement procedures outlined in Penal Code section 1306 was a moot issue in light of county's collection on the underlying obligation contained in the surety contract. This contention will be discussed shortly, since it is also raised in the People's appellate brief.

On February 16, 1978, a third "Motion to Vacate Summary Judgment and for Order Restoring Monies Paid" was filed by Ramirez in Tulare County Superior Court. In his motion papers, Ramirez contended that the summary judgment was void because it had not been entered in the judgment book of the *superior* court. This, according to Ramirez, entitled him to a refund of monies paid to Tulare County from his escrow indemnity fund. The county countered with the claims of res judicata, laches, and mootness. In addition, on March 27, 1978, county filed a "Motion to Quash Motion to Vacate Summary Judgment and to Impose Contempt...and for Award of Attorneys Fees." Essentially, county argued that a finding of contempt was justified because of Ramirez' failure to comply with Code of Civil Procedure section 1008. It was also contended that county was entitled to an award of attorney fees based upon a "vexatious litigation" theory. Supplemental papers were presented by both sides. The superior court (per Bradley, J.) denied both motions on May 11, 1978. Ramirez appeals from the denial of his motion to vacate, and the People cross-appeal from those portions of the order denying both imposition of contempt and an award of attorney fees.

Ramirez contends that, since the 1971 summary judgment was not entered in the superior court judgment book, he was entitled to have the bail exonerated pursuant to Penal Code section 1306. Because the summary judgment was a nullity, argues Ramirez, reimbursement of the monies from his United indemnity fund should be made to him. The People dispute this contention, raising the following counterarguments: (1) lack of standing; (2) mootness caused by collection on United's underlying obligations; (3) res judicata; and (4) laches. An examination of the applicable law shows that Ramirez' position is defeated by the doctrine of res judicata.

█ Initially, it should be noted that a judgment void on its face may be set aside by the court at any time through institution of a collateral attack. (See *Baird* v. *Smith* (1932) 216 Cal. 408, 410 [14 P.2d 749]; 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 10, pp. 3590-3591.) Although the time limitations for appealing the original summary judgment had long since passed, Ramirez' filing of a motion to vacate was a proper means of attempting to attack a purported void judgment.

The record clearly shows and the People concede the 1971 summary judgment was never entered into the judgment book of the superior

court. This omission violated the requirements of Penal Code section 1306, which provides: "When any bond is forfeited and the period of time specified in Section 1305 [180 days after mailing the notice of forfeiture] has elapsed without the forfeiture having been set aside, the court which has declared the forfeiture, regardless of the amount of the bail, shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman has bound himself.

"If, because of the failure of any court to promptly perform the duties enjoined upon it pursuant to this section, summary judgment is not entered within 90 days after the date upon which it may first be entered, the right to do so expires and the bail is exonerated."

As Ramirez aptly notes, the summary judgment had to be entered by March 9, 1971. Nonetheless, there has been no entry of judgment to this date. ▆ Since the requisites of section 1306 are jurisdictional in nature (see *People* v. *Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216, 219 [119 Cal.Rptr. 917] (criticized on other grounds in *People* v. *Amwest Surety Insurance Co.* (1980) 105 Cal.App.3d 51, 55, fn. 2 [164 Cal.Rptr. 159]); *People* v. *Surety Ins. Co.* (1973) 30 Cal.App.3d 75, 79-80 [106 Cal.Rptr. 220]), the failure to enter the summary judgment within the proper time rendered it null and void.[5] Furthermore, the court could not cure the omission through a nunc pro tunc order. (*People* v. *Surety Ins. Co., supra*, 30 Cal.App.3d at pp. 79-80.)

Since the summary judgment was void, it was error for the superior court to deny Ramirez' 1978 motion to vacate unless one of the defenses raised by the People was meritorious. These counterarguments will be reviewed seriatim.

▆ Respondent initially urges that Ramirez had no standing to bring his motions to vacate because he was not a party to the original summary judgment on the bail bond. This argument ignores the principle that a stranger may attack a void judgment if some right or interest in him would be affected by its enforcement. (*Mitchell* v. *Auto. etc. Underwriters* (1941) 19 Cal.2d 1, 7 [118 P.2d 815, 137 A.L.R. 923]; *Mumma* v. *Mumma* (1948) 86 Cal.App.2d 133, 136 [194 P.2d 24]; 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 15, p. 3595.) The requisite degree of interest was conferred

---

[5]See also Code of Civil Procedure section 664, which provides: "In no case is a judgment effectual for any purpose until entered."

upon Ramirez by the Los Angeles decree, which found that bail agents must indemnify United for bail bond liability under the surety-bail agent contract. (Cf. *People* v. *North Beach Bonding Co.* (1974) 36 Cal. App.3d 663, 666-667 [111 Cal.Rptr. 757] ("...the broker, who may be responsible to his principal, the bonding company, is a party aggrieved by the orders it seeks to have reversed.").)[6] Because Ramirez has an interest in the summary judgment as the declared indemnitor, he has standing to challenge the void judgment.[7]

■ The People next contend that county's collection on the *underlying obligation* by the California commissioner moots the fact that the section 1306 summary judgment was void. Specifically, the People state, "If a county collects on the underlying obligation within statutory time limits, the enforcement procedures of Penal Code section 1306 become irrelevant.... The resulting Los Angeles decree simply recognized the underlying obligation on the forfeited bond and awarded the indemnity funds to the County. Since the County's claim and collection thereon were completed within the statutory time limits imposed by Penal Code section 1306, the entry of a summary judgment became moot." This argument might have merit except for the fact that collection was made on the void summary judgment rather than the underlying bail obligation to Tulare County.

An opinion by this state's Attorney General indicates that, "... [no pertinent legal authority] indicates that a bond which does conform to the statute [Civ. Code, § 2781] can be enforced only by the summary procedure established in Penal Code sec. 1306 and not by the procedures available to enforce an ordinary surety contract...." (17 Ops.Cal.Atty.Gen. 112, 113 (1951).) This opinion also concludes, "... if the summary remedy set up by Penal Code sec. 1306 should be held by the court not to be available, the District Attorney can then proceed as in an action on an ordinary surety contract .... " (*Ibid.*; cf. *United States Fidelity etc. Co.* v. *More* (1909) 155 Cal. 415, 418 [101 P. 302];

---

[6]It should be recognized that *North Beach* does not directly govern, since the People apparently acquiesced to the fact that the bail agent was an aggrieved party. (*People* v. *North Beach Bonding Co., supra*, 36 Cal.App.3d at p. 666.) Nevertheless, *North Beach* does acknowledge that a bail agent may have an interest due to some responsibility to the corporate surety. Since the Los Angeles decree establishes such an interest in Ramirez, *North Beach's* analysis is used by analogy to the instant case (where such an interest has been established of record).

[7]The People assert that Judge Jacobus' prior ruling at the first motion on the standing issue was res judicata. This contention will be discussed shortly.

*People* v. *New York Indemnity Co.* (1931) 113 Cal.App. 487, 489-490 [298 P. 849].) Although Tulare County could have sought relief based upon either the underlying obligation in United's surety contract or upon Ramirez' indemnity agreement to United (see *County of Los Angeles* v. *Leach* (1936) 15 Cal.App.2d 721, 722 [59 P.2d 1045]),[8] it did not do so. A careful examination of the notice of disbursement sent by the California commissioner shows that he was enforcing *the 1971 summary judgment* in favor of Tulare County. Since this judgment was void and distinct from an adjudication on the surety or local agent's contracts containing the underlying obligation, the subsequent collection from Ramirez' indemnity fund was improper and bail should have been exonerated under section 1306.

Furthermore, in passing, it should be observed that the county's collection on the summary judgment did not preclude Ramirez from *seeking* restoration of monies paid from his indemnity funds. ■ It is clear that, in cases where judgment has been satisfied, there is no deprivation of the right to appeal unless the payment was by way of compromise or via an agreement not to take an appeal. (See *Reitano* v. *Yankwich* (1951) 38 Cal.2d 1, 3 [237 P.2d 6].) On the present record, there is no showing that Ramirez paid the judgment in consideration for not bringing a future collateral attack or appeal. Moreover, the reasoning of *Reitano* only applies to voluntary satisfactions of judgment. Since the notice of disbursement by the commissioner made disbursement automatically, Ramirez can still attack the void summary judgment in spite of monetary satisfaction.

■ The People then argue that Ramirez' 1978 motion was barred under the doctrine of res judicata. This is based on the fact that similar issues regarding the summary judgment were adversely decided against Ramirez in the 1974 and 1976 rulings on the motions to vacate; Ramirez' failure to appeal made these determinations dispositive for purposes of the 1978 motion. This argument has merit.

■ Where a statute requires a court to follow a particular procedure, an act beyond those limits is in excess of the court's jurisdiction. (16 Cal.Jur.3d, Courts, § 43, pp. 76-77.) ■ A final judgment or or-

---

[8]*Leach* established that a county forfeiting bail has a direct cause of action against the third person who agrees to indemnify a surety on a bail bond against "'any and all liability, expenses, attorney's fees, debts, loss or damages whatever that the Surety'" should at any time sustain, incur or be put to by reason of its execution of the bail bond. (*County of Los Angeles* v. *Leach, supra*, 15 Cal.App.2d at p. 722.)

der is res judicata even though contrary to statute where the court has jurisdiction over the subject matter and the parties. (See *City and County of San Francisco v. Pacello* (1978) 85 Cal.App.3d 637, 642 [149 Cal.Rptr. 705].) ■ The doctrine of res judicata bars a later action upon the same cause of action in cases involving a final judgment on the merits between the same parties. (See *Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892]; *Carroll v. Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 486 [143 Cal.Rptr. 772].) ■ Even if the judgment was erroneous, it bars the later action. (*People v. Walling* (1961) 195 Cal.App.2d 640, 648 [16 Cal.Rptr. 70] (criticized on another point in *People v. Argonaut Ins. Co.* (1977) 71 Cal.App.3d 994, 997 [139 Cal.Rptr. 795]).) ■ The prior judgment determines not only every issue raised in that action, but every issue that *might* have been raised. (*Sutphin v. Speik* (1940) 15 Cal.2d 195, 202 [99 P.2d 652, 101 P.2d 497]; *Carroll v. Puritan Leasing Co., supra*, at p. 486.) Moreover, whether two causes of action are substantially similar is determined under the primary right theory: if the second action is based on the same right or obligation, the cause of action is the same even though different or additional relief is sought. (See *Owl Drug Co. v. Bryant* (1953) 115 Cal.App.2d 296, 302 [252 P.2d 69]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 193, p. 3333.)

In 1974, Judge Jacobus denied Ramirez' motion to vacate the summary judgment and no appeal was taken therefrom. The judge found that Tulare County had collected on the judgment within two years, that the Los Angeles decree on the indemnity funds was binding,[9] and that "the validity of the Los Angeles decree [should not] be adjudicated now by this court in this action, which is long since final, and has been enforced." Under the Los Angeles decree, United's liquidator (California Insurance Commissioner) was *ordered* to pay "finally approved claims on account of bonds written by an Agent [e.g., Ramirez]" from the indemnity funds of bail agents. Pursuant to the decree, the commis-

---

[9]Specifically, the court stated: "What the moving party here is attempting to do is to obtain reimbursement of his funds. In reality the moving party is collaterally attacking the Los Angeles judgment, wherein that court required the moving party here to indemnify the United Bonding Insurance Company in connection with certain bail bond claims, one of which was the one involved in the Summary Judgment action. The moving party's allegations that he had no notice of the Los Angeles action, that he was not heard, that he did not defend his position, and that these monies were improperly paid pursuant to that order, all add up to an attack on the validity of the Los Angeles judgment. If the moving party now feels that the Los Angeles judgment was void, or voidable, he should attack that judgment directly in the Los Angeles Superior Court, and in that action."

sioner sent a notice of disbursement to Ramirez informing him of Tulare County's entitlement to collection based on the summary judgment. Accordingly, monies were disbursed to the county. Ramirez challenged neither the decree nor the disbursement notice, although he had notice of both actions. Two years later, in his 1976 motion, Ramirez argued for bail exoneration on the ground that the summary judgment was not entered in the municipal court. This second motion to vacate was also denied. Finally, Ramirez brought his 1978 motion, based upon the fact the judgment had not been entered in the judgment book of the superior court.

The above scenario readily demonstrates why Ramirez could not pursue his 1978 motion. He was barred under the doctrine of res judicata. First, the Los Angeles decree constituted a final order about entitlement to indemnity funds, which was subsequently enforced when Tulare County sent its "claim" (the summary judgment) to the California commissioner for collection. This implies that it was to have binding effect upon Ramirez. Judge Jacobus' determination of finality to the Los Angeles decree (itself a final order) was tantamount to imparting res judicata effect to that decree. It is settled that a determination as to the validity of a former adjudication is res judicata in a subsequent proceeding attacking it. (*Geibel* v. *State Bar* (1939) 14 Cal.2d 144, 148 [93 P.2d 97], cert. den. (1938) 305 U.S. 653 [83 L.Ed. 423, 59 S.Ct. 248]; *Lake* v. *Bonynge* (1911) 161 Cal. 120, 124-131 [118 P. 535], app. dism. (1914) 232 U.S. 715 [58 L.Ed. 812, 34 S.Ct. 330].) Second, since Ramirez was represented at the 1974 motion proceeding, there can be no dispute that Jacobus' ruling involved different parties. Third, a careful examination of the 1973 motion papers reveals that the same primary right (prayer for restitution of monies) and that a similar issue (tardy enforcement under Pen. Code, § 1306) were involved as the relief and issues presented at the 1978 proceeding. In his most recent attempt to set aside the summary judgment, Ramirez asked for restitution of funds from Tulare County on the ground that entry was not made pursuant to section 1306. It is clear, however, that the "no entry" issue could have been raised in the 1973 motion papers. Since the same basic primary right (restoration of monies by county) was petitioned for in the 1973, 1976 and 1978 motions to vacate, res judicata barred further attempts after Judge Jacobus ruled adversely. Finally, even if the 1974 judgment was not a bar, the denial of the 1976 motion definitively closed the door. Ramirez asked for restoration of monies and even presented a no-entry issue, albeit in regard to municipal court action, at the 1976 hearing. Since he could have posited the

no-entry contention raised subsequently (i.e., no entry in superior court judgment book), his failure to do so made the 1976 ruling dispositive on res judicata principles.

■ In response, Ramirez calls attention to the rule that res judicata is inapplicable to void judgments. (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 149, p. 3294.) This, he argues, means that "the orders of the trial court below are wholly void for the lack of subject-matter jurisdiction." The fatal flaw in this position is that the 1974 and 1976 rulings on Ramirez' first two motions to vacate are the judgments having res judicata effect. Even though the original summary judgment was void, collection was made pursuant to the terms of the Los Angeles decree which, in turn, was found binding by Judge Jacobus. Although Ramirez could have appealed the 1974 ruling, he chose to not do so. Furthermore, Ramirez raised a closely related "no-entry issue" at the 1976 motion. He also abstained from appealing the adverse determination on the second motion. As cogently noted in a similar case, this failure to appeal was fatal: "The order [denial of the first motion to vacate the bail foreclosure] became res judicata. The later motions were simply ineffectual for any purpose. Any appeal from an order denying a later motion on the same subject would have the ridiculous effect of allowing appeal upon appeal, ad infinitum, because all that would be necessary to carry on the litigation indefinitely would be to simply go on making new motions and taking an appeal from each new order of denial." (*People* v. *Walling, supra*, 195 Cal.App.2d at p. 649; see also *People* v. *Wabash Fire & Cas. Ins. Co.* (1967) 256 Cal.App.2d 386, 388 [64 Cal.Rptr. 74].) As in *Walling*, sound policy supports application of res judicata to the present appeal.

The People's last counterargument is that Ramirez was barred by laches. This is premised on the assertion that restoration of monies under the third motion would be prejudicial, since Tulare County would be irreparably harmed if it had to retrieve the $2,500 payment from agencies which have expended the funds for proper objectives.

■ In order to establish laches, the People must ordinarily raise it with sufficient clarity in pleadings or in trial briefs. (See *City and County of San Francisco* v. *Pacello, supra*, 85 Cal.App.3d at p. 644.) Laches is shown by proving that an unexplained delay caused prejudice to a party. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 15, p. 5240.) The trial court is justified in finding laches if it so appears from the complaint or the evidence. (*Pacello, supra*, at p. 644.)

In their 1978 responsive papers, the People merely asserted, "In this case, Ramirez waited more than two years after judgment to file his first motion, two years to file his second motion and two more years to file this third motion. Estoppel and laches would seem to apply." This allegation showed no prejudice to the delay, and there is nothing which indicates that the lower court based its ruling on laches. Although the People's "irreparable harm" theory indicates some degree of prejudice, this thesis was not presented below. Since laches "is a question in the first instance for the trial court" (*Akley* v. *Bassett* (1922) 189 Cal. 625, 648 [209 P. 576]), it would be improvident to so find based upon creative argumentation before an *appellate* tribunal.

Nonetheless, assuming its cognizance at this stage, the People have not demonstrated prejudice from Ramirez' delay. Public agencies frequently must refund monies for ultra vires activities or for violating statutory procedures. Since this is a reality of governmental operation, no prejudice has been shown by the county from the possibility of bail exoneration.[10]

Notwithstanding the fact that the 1971 summary judgment was never entered in the superior court judgment book, Ramirez was properly barred from seeking relief under the doctrine of res judicata. Thus, the trial court correctly denied the 1978 motion to vacate.

The People, in their cross-appeal, contend that the lower court erred in denying the motion to quash and/or to impose contempt on Ramirez and in refusing to award attorney fees under the federal vexatious litigation theory.

In support of the motion to quash and to impose contempt sanctions, the People note that Ramirez did not obtain leave of court to file the 1976 and 1978 motions pursuant to Code of Civil Procedure section

---

[10]The People's reliance upon *McDermott v. Superior Court* (1972) 6 Cal.3d 693, 698, footnote 3 [100 Cal.Rptr. 297, 493 P.2d 1161], is misplaced. That case found merit to the "public reimbursement" theory under circumstances where a bailee was precluded from recovering penalty money on grounds of *waiver* and *estoppel*. The court found that the return of funds would irreparably damage the activities of a specific group—the Peace Officers' Training Fund. Since "estoppel cases ... are of limited utility in determining the law of laches" (*City and County of San Francisco v. Pacello, supra*, 85 Cal.App.3d at p. 645) and because the People here made no showing that a particular agency was hurt, *McDermott* is inapposite to the present situation.

1008.[11] Since Ramirez did not file an affidavit disclosing the two previous rulings and did not disclose the new facts underlying his third motion, argue the People, contempt should have been imposed for noncompliance with section 1008.

The record clearly shows that the 1978 motion was heard before Judge Bradley, who had previously considered and denied the 1976 motion. The 1978 motion was based on different facts—the affidavit of Ramirez' employee proving nonentry of the summary judgment in the superior court judgment book. There is no indication that Ramirez filed the disclosure affidavit before Judge Bradley at the 1978 motion proceeding.

There was no error in denying the motion to quash. Former section 1008 provides that a violation of its requirements could be handled in the following ways: (1) the order based on the subsequent motion could be revoked on ex parte motion; (2) the judge could punish a violation by imposing contempt sanctions; or (3) the judge making the order or the judge before whom the action was pending could vacate the tainted order. Conspicuously missing is the prophylactic cure of quashing the pending motion. Thus, it was proper to deny Ramirez' use of a *pre*order remedy in order to enforce section 1008 disclosure requirements.

Equally devoid of merit is the claim that the trial court abused its discretion in denying the request to impose contempt sanctions upon Ramirez. Ordinarily, a court will refuse to consider repeated motions by substantially the same showing as the one denied, although it is not obligated to do so. (See *Josephson* v. *Superior Court* (1963) 219 Cal.App.2d 354, 359-360 [33 Cal.Rptr. 196].) A trial court

---

[11]At the time of the 1978 motion in the trial court, Code of Civil Procedure section 1008 read in pertinent part: "When an application for an order has been made to a judge, or to the court, and refused in whole or in part, or granted conditionally, or on terms, and subsequent application for the same order, upon an alleged different state of facts, shall be made, it shall be shown by affidavit what application was before made, when and to what judge, what order or decision was made thereon and what new facts are claimed to be shown. For a failure to comply with this requirement, any order made on such subsequent application may be revoked or set aside on ex parte motion.

"A violation of this section may be punished as a contempt; and an order made contrary thereto may be revoked·by the judge or commissioner who made it, or vacated by a judge of the court in which the action or proceeding is pending." (Stats. 1951, ch. 1737, § 134, p. 4132.) In 1978, the section was reenacted with changes. (Stats. 1978, ch. 631, § 2, p. 2084.) Since the 1978 amendment was not effective until January 1, 1979 (see *Moore* v. *City of Torrance* (1979) 101 Cal.App.3d 66, 70-71 [166 Cal.Rptr. 192]), it is appropriate to apply the previous version of the provision.

has discretion when it comes to reconsidering a renewal motion and imposing contempt sanctions for noncompliance with section 1008. (Code Civ. Proc., § 1008, subd. (c).) The 1976 and 1978 motions were both heard by Judge Bradley. The 1978 motion was based upon different facts than those upon which the 1976 motion was based. We find that he did not abuse his discretion in denying the motion to impose contempt sanctions. (Cf. *Lopez* v. *Larson* (1979) 91 Cal.App.3d 383, 393 [153 Cal.Rptr. 912].)

The court did not err in denying the People's request for attorney fees under the "federal vexatious litigant" theory. (See *Serrano* v. *Priest (Serrano III)* (1977) 20 Cal.3d 25, 42 [141 Cal.Rptr. 315, 569 P.2d 1303]; *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 26-27 [112 Cal.Rptr. 786, 520 P.2d 10]; *Twentieth Century-Fox Film Corp.* v. *Harbor Ins. Co.* (1978) 85 Cal.App.3d 105, 114 [149 Cal.Rptr. 313].) Even though at least two appellate courts have expressed some inclination to accept the theory (see *Save El Toro Assn.* v. *Days* (1979) 98 Cal.App.3d 544, 554-555 [159 Cal.Rptr. 577]; *County of Inyo* v. *City of Los Angeles* (1978) 78 Cal.App.3d 82, 91-93 [144 Cal.Rptr. 71]), other appellate courts have not. (See *Yarnell & Associates* v. *Superior Court* (1980) 106 Cal.App.3d 918, 923 [165 Cal.Rptr. 421]; *Fabricant* v. *Superior Court* (1980) 104 Cal.App.3d 905, 908-910 [163 Cal.Rptr. 894].) Counsel for the People has called these cases to our attention by written memo, and has also cited *Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 635-640 [150 Cal.Rptr. 461, 586 P.2d 942]. Both by written citation and by statements during oral argument, counsel for the People concedes that the state Supreme Court has decided the issue adversely to the arguments made for adoption of the doctrine. We agree; therefore, further discussion of this issue is pointless.

We find no error upon the part of the trial court in making the order appealed from.

The order is affirmed.

Franson, Acting P. J., and Hanson (P. D.), J., concurred.