Filed 2/28/13  P. v. Hughes CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOHN ROSS HUGHES,<br><br>        Defendant;<br><br>BAD BOYS BAIL BONDS,<br><br>        Real Party in Interest and Appellant. | B238052<br><br>(Los Angeles County Super.<br>   Ct. No. OSJ1373) |

        APPEAL from a judgment of the Superior Court of Los Angeles County. Marsha N. Revel, Judge.  Affirmed.


        Jefferson T. Stamp for Real Party in Interest and Appellant.


        Ruben Baeza, Jr., Assistant County Counsel, and Joanne Nielsen, Deputy County Counsel, for Plaintiff and Respondent.

_____

Bail agent Bad Boys Bail Bonds (appellant), appeals from the Judgment on Forfeited Bond and Demand for Payment, entered on August 24, 2011. Appellant contends the court's earlier denial of appellant's Motion to Vacate Bond Forfeiture and Exonerate The Bond (Motion to Vacate) was error because the prosecutor in the underlying criminal case effectively elected not to seek extradition of the defendant, who was found outside California. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 26, 2010, defendant John Ross Hughes was released on a $10,000 bail bond following his arrest for misdemeanor driving under the influence (Veh. Code, § 23152, subd. (a)) and misdemeanor possession of narcotics paraphernalia (Health & Saf. Code, § 11364, subds. (a) & (b)). The surety on the bail bond was North River Insurance Company (the surety), and appellant was the bail agent. Hughes pled not guilty at his arraignment on June 22, 2010. By August 12, 2010, defense counsel had lost contact with Hughes. When Hughes did not appear at a pretrial hearing that day, the trial court ordered the bond forfeited. Notice of the forfeiture was mailed to appellant and the surety that day. (Pen. Code, § 1305, subd. (a).)[1]

By law, only if Hughes voluntarily or otherwise appeared in court within 180 days of bond forfeiture would the forfeiture be exonerated. (§ 1305, subd. (c)(1).) On January 19, 2011, within the statutory period, appellant filed a motion to extend the statutory 180-day period. (See § 1305.4.) Appellant's investigator declared that Hughes's maternal aunt, Mary Thompson, told him that Hughes was in Montreal, Canada. He learned that Hughes was sought by police in South Burlington, Vermont on "failure to register" charges. Both state and federal officials were involved in the

_____

[1] All undesignated statutory citations are to the Penal Code. Section 1305 was amended effective January 1, 2013. (Stats. 2012, ch. 129, § 1.) Citations to section 1305 in this opinion are to the former statute in effect at the relevant time.

2

investigation. The trial court extended the appearance period to avoid forfeiture to May 31, 2011.

On May 13, 2011, appellant moved for a second 180-day extension. Appellant's new investigator, William Almer, had learned that the South Burlington police had notified Canadian authorities that Hughes was a suspect in a fraud investigation and was believed to be in Montreal. Almer had met with Hughes's father in Vermont. Although he would not give Hughes's Canadian contact information to Almer, the father promised to pass on to his son Almer's representation that Hughes was not extraditable and Almer only wanted to make contact with him to correctly fill out the "1305(g) packet."[2] In a second meeting, Almer gave Hughes's father the "1305(g) packet" and prepaid, return addressed FedEx envelopes. Hughes's father subsequently confirmed that he gave the packet and envelopes to Hughes. Almer was told by the Montreal Police Department that Hughes had been arrested for fraud, was no longer in custody but was scheduled to appear on August 29; the Montreal police gave Almer Hughes's Montreal address. He was also told Vermont did not intend to seek extradition. The court extended the 180-day period a second time, to August 18, 2011.

In a letter dated July 15, 2011, appellant's counsel informed Deputy District Attorney Ann Huntsman, of the Extradition Services Section, that Hughes had been located in Montreal, Canada. The section 1305, subdivision (g) identification packet was enclosed. Counsel asked D.A. Huntsman to elect whether to extradite Hughes in the present case and also in a second case pending against Hughes in which he was charged with felony failure to register as a sex offender and a related misdemeanor

---

[2]    Section 1305, subdivision (g) provides: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."

3

(No. BA368002).  In response to concerns that Huntsman had expressed, counsel provided an updated identification packet on July 28.

After consulting with the Criminal Affairs Division of the United States Department of Justice, D.A. Huntsman determined that, pursuant to the relevant treaty between the United States and Canada, only charges that were punishable by imprisonment for more than one year were extraditable, and charges could not be aggregated to arrive at a sentence longer than one year.  Although the failure to register as a sex offender charge in case No. BA368002 was an extraditable offense under the treaty, the charges in the present case were not because they carried only a maximum six-month sentence.

In an email dated August 3, 2011, D.A. Huntsman informed counsel that the charges in the present case were not extraditable and that she had not yet made a decision on whether to seek extradition in the separate failure to register case.  She subsequently informed counsel that, although failure to register as a sex offender was an extraditable offense, the district attorney had elected not to extradite in that case.

Meanwhile, pursuant to Penal Code section 1305, subdivision (g), on August 8, 2011, appellant filed in the present case the subject motion to vacate (or, alternatively, to toll or extend the 180-day appearance period to August 27, 2011).  The gist of the motion was that the district attorney had in effect elected not to seek Hughes's extradition from Canada and by statute the election required the bond forfeiture to be set aside.  Appellant argued that under Civil Code section 1449 (contracting party's failure to make a timely selection of available alternatives gives the other party the right to select), the People's failure to extradite Hughes constituted a constructive election not to do so.  Alternatively, appellant argued that, even if extradition was foreclosed by the treaty, under Civil Code section 1451 (impossibility of performance) the district attorney should be deemed to have elected not to extradite.[3]  The People countered that the unfeasibility of extraditing

[3]     Civil Code section 1449 provides:

4

Hughes because of the treaty was not tantamount to an election not to extradite and that the Civil Code sections were not applicable because those statutes contemplate a contractual arrangement, and there was no contract between appellant and the district attorney. The People also argued that nothing in Penal Code section 1305, subdivision (g) suggested the Legislature intended to vacate a bail forfeiture in the event a criminal defendant was in a country from which he could not be extradited.

The trial court agreed and denied the Motion to Vacate. Notice of Entry of Judgment on Forfeited Bond and Demand for Payment was entered against the surety on August 24, 2011, and mailed to appellant and the surety that same day. Appellant filed a timely notice of appeal.

## DISCUSSION

### A.    *We Treat the Appeal as One From the Motion to Vacate Forfeiture*

The notice of appeal states that the appeal is from the underlying judgment, a judgment entered not against appellant but against the surety, North River Insurance Company. Respondent points out this discrepancy in its argument, entitled, "[Appellant] Does Not Have Standing to Bring this Appeal." An appeal is permitted from a judgment forfeiting a bond only in limited circumstances: when the judgment was not in conformance with the consent to judgment given in the bond or was otherwise void.

---

"RIGHT OF SELECTION, HOW LOST. If the party having the right of selection between alternative acts does not give notice of his selection to the other party within the time, if any, fixed by the obligation for that purpose, or, if none is so fixed, before the time at which the obligation ought to be performed, the right of selection passes to the other party."

Civil Code section 1451 provides:

"NULLITY OF ONE OR MORE OF ALTERNATIVE OBLIGATIONS. If one of the alternative acts required by an obligation is such as the law will not enforce, or becomes unlawful, or impossible of performance, the obligation is to be interpreted as though the other stood alone."

5

(*County of Los Angeles v. American Bankers Ins. Co.* (1996) 44 Cal.App.4th 792, 795; *People v. Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216, 221.)  Even if those circumstances are present, additional limitations are placed on a bail agent prosecuting an appeal from the final judgment of forfeiture which facially is against the surety only.  (See *People v. Silva* (1981) 114 Cal.App.3d 538, 547-548.)

We need not address these points any further because we treat the appeal as if it were from the Motion to Vacate, the denial of which preceded the actual entry of summary judgment.  A motion to vacate bond forfeiture and exonerate the bond is an appealable order.  (*County of Los Angeles v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 538, 542 (*Fairmont*).)  "Notices of appeal, of course, are to be liberally construed to permit, if possible, a hearing on the merits.  It has been held that a misdescription of an 'order' as a 'judgment,' or vice versa, will not invalidate a notice of appeal.  [Citations.]  An incorrect date in the notice of appeal will not necessarily invalidate it."  (*Holden v. California Emp. etc. Com.* (1950) 101 Cal.App.2d 427, 430-431 [appeal deemed to be from appealable order and not subsequent nonappealable judgment].)  If " ' "it is reasonably clear what appellant was trying to appeal from" ' " and " 'no prejudice would accrue to respondent,' " an appellate court may treat an appeal from an order or judgment other than what appears on the notice.  (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18 [appeal from denial of motion for new trial treated as appeal from judgment], quoting *Vibert v. Berger* (1966) 64 Cal.2d 65, 68.)

At oral argument, respondent acknowledged this rule of appellate practice, and pointed out that the arguments respondent had made in its Respondent's Brief were addressed in the context of an appeal from a motion to vacate forfeiture, and that respondent would suffer no prejudice if we so construed the notice of appeal.[4]

---

**4**     Respondent does not suggest appellant lacks standing to appeal from the order denying the motion to vacate the forfeiture.  Section 1305, subdivision (i) expressly authorized appellant to bring a motion to vacate forfeiture.  The statute at the time provided:  "A motion filed in a timely manner within the 180-day period may be heard

6

Here, although the notice of appeal states that it is from the "Judgment on Forfeited Bond and Demand for Payment entered on August 24, 2011," in light of how the parties have argued the case on appeal, and the lack of prejudice to respondent, we treat the appeal as from the August 19 order denying the motion to vacate and proceed to our discussion of whether the trial court erred in denying that motion.

## B. Standard of Review

We review an order denying a motion to set aside a bail forfeiture for abuse of discretion. (*Fairmont, supra*, 173 Cal.App.4th at p. 543.) Under this standard, findings of fact underlying the exercise of discretion are reviewed for substantial evidence, conclusions of law are reviewed de novo, and application of the law to the facts is reversible only if "arbitrary and capricious." (*Ibid*.) We agree with the court in *Fairmont*, that we review de novo the trial court's interpretation of section 1305, subdivision (g), and we review the trial court's finding of lack of feasibility of extradition under the substantial evidence test. (*Fairmont*, at p. 543.)

## C. Failure to Pursue an Unavailable Extradition Is Not Tantamount to an Election Not to Extradite Within the Meaning of Section 1305, Subdivision (g)

Section 1305 identifies the circumstances under which the trial court must vacate a bond forfeiture. Relevant here is section 1305, subdivision (g), which provides: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively

within 30 days of the expiration of the 180-day period. The court may extend the 30-day period upon a showing of good cause. The motion may be made by the surety insurer, *the bail agent*, the surety, or the depositor of money or property, any of whom may appear in person or through an attorney." (Italics added.) Since the bail agent may bring the motion to vacate, it may appeal from an adverse ruling. (See *People v. Alistar Ins. Co.* (2003) 115 Cal.App.4th 122, 124 [surety and bail agent both appealed from denial of motion to extend 180-day forfeiture period; order reversed].)

7

identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency *elects not to seek extradition* after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." (Italics added.)

It is well established that, "[i]f the situation is such that the prosecutor has no meaningful choice because extradition is not feasible, the prosecutor cannot elect whether or not to seek extradition. Thus, a statutory condition to vacating the forfeiture and exonerating the bond cannot be met. This interpretation of section 1305, subdivision (g), renders unnecessary any express language that infeasibility of extradition precludes relief from forfeiture of the bond." (*Fairmont, supra*, 173 Cal.App.4th at p. 544; see also *County of Orange v. Ranger Ins. Co.* (1998) 61 Cal.App.4th 795, 802-803.)

Feasibility within the meaning of section 1305, subdivision (g) is a question of fact which depends on the foreign state's practices. (*Fairmont, supra*, 173 Cal.App.4th at pp. 544-545.) In *Fairmont*, the defendant was charged with a routine drug offense. A Honduras national, he was detained in Honduras and identified by a Fairmont agent. The district attorney opposed Fairmont's section 1305, subdivision (g) motion to vacate and exonerate the bond on the grounds that it was not feasible to extradite the defendant from Honduras. The district attorney set forth evidence that Honduras' Constitution did not allow extradition of its citizens and the extradition treaty between the United States and Honduras did not require Honduras to extradite its own citizens to the United States; since 1988, the Los Angeles County District Attorney had tried to extradite Honduran citizens seven times; none was successful. The appellate court affirmed the denial of Fairmont's motion to vacate the forfeiture finding this evidence sufficient to support the finding that extradition was not feasible. (*Id*. at pp. 541-542.)

Here, it is undisputed that Hughes was in Canada and that he was not extraditable on this case under the relevant treaty between the United States and Canada because the charges against him were not punishable for a term greater than one year. Thus, there was substantial evidence that it was not feasible for the People to extradite Hughes from

8

Canada. Under *Fairmont*, where extradition is infeasible, the prosecutor has no meaningful choice and thus cannot "elect" whether or not to seek extradition. Under such circumstances, "a statutory condition to vacating the forfeiture and exonerating the bond cannot be met." (*Fairmont, supra*, 173 Cal.App.4th at p. 544.)

That the separate California case against Hughes for failure to register as a sex offender was extraditable and the prosecutor elected not to extradite on that case does not change our analysis. The Motion to Vacate was filed in the present case and nothing in our record suggests that this case was consolidated with the separate failure to register case. Nor has appellant shown that the bail bond in this case covered the other criminal proceeding. At bottom, it is simply not relevant that, coincidentally, Hughes was also charged in some other case with an extraditable offense. If the district attorney had decided not to extradite in the second case, and a bond had been posted, presumably the court would have applied the relevant legal principles in considering a motion to vacate any bond forfeiture in that case. That situation does not concern us.

## D.     *Civil Code Section 1451 Is Not Applicable*

Appellant makes the novel argument that, where extradition is foreclosed by treaty, the prosecutor should be deemed to have elected not to extradite as a matter of law. His argument is founded on Civil Code section 1451, a statute which has been cited only three times since its enactment in 1872 and never in a bail case.[5]

Civil Code section 1451 provides: "If one of the alternative acts required by an obligation is such as the law will not enforce, or becomes unlawful, or impossible of performance, the obligation is to be interpreted as though the other stood alone." As we understand the argument, it is that the bail bond is a contract between the state (of which the prosecutor is an agent) and the surety; the terms of that contract incorporate by reference Penal Code section 1305; section 1305, subdivision (g) requires the prosecutor to elect between two alternatives: to extradite or not to extradite; by operation of Civil

---

[5]     In the trial court, appellant made a related argument based on Civil Code section 1449. It does not repeat the argument on appeal, so we do not address it.

Code section 1451, where it is impossible for the prosecutor to elect extradition, the contract must be interpreted as though the prosecutor elected to not extradite and thus the forfeiture must be set aside. The People counter that Civil Code section 1451 does not apply. If it did, the People suggests it works to their favor and would apply to the provision requiring the surety to either produce the defendant or pay the bond; if the surety cannot produce the defendant, the alternative of paying the bond stands alone. We find Civil Code section 1451 inapplicable.

"A bail bond is a contract between the government and the surety in which the surety acts as a guarantor of the defendant's appearance under risk of forfeiture of the bond. [Citation.] As a result, when this contract is breached, the bond should be enforced." (*People v. Accredited Surety & Casualty Co.* (2012) 207 Cal.App.4th 163, 167.) As we have observed, the rule that infeasibility of extradition does not constitute an election not to extradite under Penal Code section 1305, subdivision (g) is well settled. (*Fairmont, supra,* 173 Cal.App.4th at p. 544; *County of Orange v. Ranger Ins. Co., supra,* 61 Cal.App.4th at pp. 802-803.) In the context of Civil Code section 1451, that a treaty does not allow extradition does not extinguish one of the alternatives of the People's performance for there is only one way for the People to perform to avoid the forfeiture from being set aside – to extradite if extradition is available. If it is not available, there is nothing for the People to do and the bond remains forfeited. We see no unfairness. That the defendant may abscond to a foreign jurisdiction from which he cannot be extradited is part of the risk that the surety takes when it agrees to bond the defendant's bail. Civil Code section 1451 does not operate to absolve the surety of that risk.

## DISPOSITION

The order denying the Motion to Vacate is affirmed.  Respondent shall recover its costs on appeal.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.                                           GRIMES, J.

11